```
☒ FILED          ☐ LODGED
☐ RECEIVED       ☐ COPY

     OCT 2 5 2022

CLERK U S DISTRICT COURT
   DISTRICT OF ARIZONA
BY                  DEPUTY
```

Jason Crews
164 W Laurel Ct
Gilbert, AZ 85233
602-295-1875

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT ARIZONA

### PHOENIX DIVISION

| | |
|---|---|
| Jason Crews,<br><br>               Plaintiff,<br><br>vs.<br><br>Diablo Media, LLC<br>             Defendant | Case No.: No. **CV22-01829-PHX-SMM**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>1.    NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.]<br>2.    WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.]<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

### Preliminary Statement

1.  Plaintiff Jason Crews ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2.  The Defendant in this action, Diablo Media, LLC ("Diablo Media") orchestrated placing at least four illegal calls using an Automated Telephone Dialing System ("ATDS") to the Plaintiff's telephone number.

3.  The plaintiff never consented to receive such messages.

## Parties

4. Plaintiff Jason Crews resides at 164 W. Laurel Ct, Gilbert, AZ 85233, is an Arizona resident, and a resident of this District.

5. Defendant Diablo Media, LLC a limited liability company registered in Colorado, and is headquartered at 3001 Brighton Blvd., Suite 769, Denver, CO 80216.

6. At all material times, Defendant includes and included any and all parties, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organization units of any kind, predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

## Jurisdiction & Venue

7. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions given rise to the claim occurred I this District, as the calls to the Plaintiff were placed into this District.

## Introduction

9. This action is brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227 and its implementing regulations contained in 47 CFR § 64.1200, a federal statute and related regulations enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC* 132 S. Ct. 740, 745 (2012).

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry. In so doing, Congress recognized that "[u]nrestricted

telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### The TCPA Prohibits all Automated

### Calls To Protected Numbers

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automated telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a …paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the party is charged for the call." 47 U.S.C. § 227 (b)(1)(A)(iii).

12. Congress singled out these services for special protection because Congress realized their special importance in terms of consumer privacy and therefor protected them (as is the case of cellular phones). *Barr v. Am. Ass'n of Pol. Consultants Inc.* 140 S. Ct. 2335, 2356, (2020) (Gorsuch, J. & Thomas., concurring in part and dissenting in part).

13. According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such messages are prohibited because, as Congress found, automated or prerecorded messages are a greater nuisance and invasion of privacy than live ones, are costly, and inconvenient.

14. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(1)(3).

15. These causes of action apply to users of any one of four protected services (pager, cellular, specialized mobile radio [i.e. radio telephony locator beacons or dispatch

1  systems], or other radio common carrier service [i.e. ship-to-shore or air-to-ground]), or

2  any service, including residential, VoIP, and landline services, for which called party is

3  charged. *Lynn, Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 623, (D. Md.

4  2013).

5       16. "Non-Emergency pre-recorded voice or autodialed calls to [the destinations

6  enumerated in 47 U.S.C. § 227(b)(1)(A) are permissible only with the prior express

7  consent of the called party."

8       17. U.S.C. § 227(c)(2) states "No person or entity shall initiate any telephone

9  solicitation to … A residential telephone subscriber who has registered his or her

10 telephone number on the national do-not-call registry of persons who do not wish to

11 receive telephone solicitations that is maintained by the Federal Government", and

12 defines "telephone solicitation" as "The term telephone solicitation means the initiation

13 of a telephone call or message for the purpose of encouraging the purchase or rental of, or

14 investment in, property, goods, or services, which is transmitted to any person…".

15 U.S.C. § 227(f)(15).

16       18. 47 CFR § 64.1200 extends 47 U.S.C. § 227 and establishes several delivery

17 restrictions. It states, "No person or entity may: … Except as provided … initiate any

18 telephone call … using an automatic telephone dialing system or an artificial or

19 prerecorded voice."

20       19. 47 CFR § 64.1200(a)(1) specifically protects "emergency telephone line",

21 "guest room or patient room of a hospital, health care facility, elderly home, or similar

22 establishment", and/or "cellular telephone service". 47 CFR § 64.1200(a)(2) further

23 prohibits "Initiate, or cause to be initiated, any telephone call that includes or introduces

24 an advertisement or constitutes telemarketing, using an automatic telephone dialing

25

system or an artificial or prerecorded voice, to any of the lines or telephone numbers described...".

20. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.   47 C.F.R. § 64.1200(c)(2).

21. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

22. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

23. 47 CFR § 64.1200(d) states "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." It goes on to establish specific "minim standards":

(1) "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand...."

(4) "A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

1

## The National Do Not Call Registry

The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. 47 C.F.R. § 64.1200(c)(2).

A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id. 19. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## Text Messages are Calls and Regulated by the TCPA

The FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. See *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (emphasis added).

As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12

1  (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)

2  (emphasis original)).

3  **The Party on Behalf a Solicitation is Made Bears Ultimate Responsibility**

4  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of*

5  *1991*, 27 FCC Rcd. 1830, 1844, ¶ 33 (2012) (footnote and internal quotation marks

6  omitted). FCC regulations "generally establish that the party on whose behalf a

7  solicitation is made bears ultimate responsibility for any violations." *In the Matter of*

8  *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd.

9  12391, 12397 ¶ 13 (1995).

10  The FCC confirmed this principle in 2013 when it explained that "a seller … may be held

11  vicariously liable under federal common law principles of agency for violations of either

12  section 227(b) or section 227(c) that are committed by 3rd party telemarketers." *In the*

13  *Matter of the Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd. 6574, 6574 ¶ 1*

14  *(2013)*.

15  **Factual Allegations**

16  **Plaintiff's Numbers**

17  24. The phone number (602) 295-XXXX ("Cell Number") belongs to the Plaintiff.

18  25. Plaintiff received the calls on their private mobile telephone number, as

19  defined and set forth in 47 C.F.R. § 64.1200(a)(1)(iii). Plaintiff's telephone number is

20  registered with T-Mobile as a cellular telephone number and is a residential telephone

21  that is used for personal purposes.  Plaintiff did not give consent to Defendant for

22  prerecorded or automated messages to his Cell Number.

23  26. The Cell Number has been on the National Do-Not-Call registry since

24  November 7, 2006.

25

27. The Cell number is not associated with a business.

28. Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 C.F.R. § 64.1200(a)(1)(iii).

### Calls to Plaintiff

### Call One

29. On or about May 5, 2022, Plaintiff received a call from caller-id 44515 using an ATDS.

30. The message state "Hi Ronald, Ever wonder how much your mesa home is worth? See your offer https://trks.me/ocbxjb reply STOP to end".

31. When clicked, the now dead, link redirected to a website advertising real estate services.

32. The call was an advertisement for goods and services.

33. The link provided was redirected through Defendant affiliate link to drive traffic and sell the services of Defendant customer.

34. Defendant are paid for this traffic, referrals, and/or commissions from the website, and in turn pay a commission to affiliates who market on their behalf.

35. Defendant did not disclose the name of the person making the call.

36. Defendant did not disclose the name of the telemarketing company.

37. Defendant did not disclose the name of the person of company the telemarketer is calling on behalf of.

38. Defendant did not disclose the purpose of the call.

39. Defendant did not provide a call back number in this call.

40. Plaintiff's name is not Ronald.

41. Plaintiff does not live in or own real-estate in Mesa.

**Call Two**

42. On or about May 13, 2022, Plaintiff received a call from caller-id 44515 using an ATDS.

43. The message state "Hey Ronald, the property -review of 2644 S Los Altos is done. Tap https://trcks.me/rkjdiw to see your current options. reply STOP to end".

44. When clicked, the now dead, link redirected to a website advertising real estate services.

45. The call was an advertisement for goods and services.

46. The link provided was redirected through Defendant affiliate link to drive traffic and sell the services of Defendant customer.

47. Defendant are paid for this traffic, referrals, and/or commissions from the website, and in turn pay a commission to affiliates who market on their behalf.

48. Defendant did not disclose the name of the person making the call.

49. Defendant did not disclose the name of the telemarketing company.

50. Defendant did not disclose the name of the person of company the telemarketer is calling on behalf of.

51. Defendant did not disclose the purpose of the call.

52. Defendant did not provide a call back number in this call.

53. Plaintiff does not live at 2644 S Los Altos, and does not own real-estate at 2644 S Los Altos.

54. Plaintiff did not request a "property -review" from Defendant.

**Call Three**

55. On or about July 8, 2022, Plaintiff received a call from caller-id 44515 using an ATDS.

56. The message state "Reduce energy bills for 2644 S Los Altos. New AZ solar programs are live. https://trcks.me/emzpih reply STOP to end".

57. When clicked, the now dead, link redirected to https://www.energybillcruncher.com/la/?tg_ref=ebc_dm_em&camp_id=meter&keyword=email&sub2=62740&imclid=&zip=85202.[1]

58. The call was an advertisement to use Defendant affiliate link to drive traffic and sell the services of Defendant customer, specifically solar panel consulting and installation services.

59. The call was an advertisement for goods and services.

60. The link provided was redirected through Defendant affiliate link to drive traffic and sell the services of Defendant customer.

61. Defendant are paid for this traffic, referrals, and/or commissions from the website, and in turn pay a commission to affiliates who market on their behalf.

62. Defendant did not disclose the name of the person making the call.

63. Defendant did not disclose the name of the telemarketing company.

64. Defendant did not disclose the name of the person of company the telemarketer is calling on behalf of.

65. Defendant did not disclose the purpose of the call.

66. Defendant did not provide a call back number in this call.

### Call Four

67. On or about July 8, 2022, Plaintiff received a call from caller-id 44515 using an ATDS.

---

[1] Archive of trace at https://wheregoes.com/trace/20223509406/

1    68. The message state "Equity Update: View how much is available at 2644 S Los

2    Altos. https://trcks.me/azguex for your options. Reply STOP to end".

3    69. When clicked, the now dead, link redirected to https://www.govloanoptions.

4    com/?publisher_id=1358&subid=79--&cake=2- cbomhlilgnsc0jfmpt80&email=ronald.|

5    harvy%40gmail.com&firstname=Ronald&lastname=Harvy&phone=16022951875&street

6    _address=2644+S+Los+Altos&zip=85202.[2]  The call was an advertisement to use

7    Defendant affiliate link to drive traffic and sell the services of Defendant customer,

8    specifically mortgages.

9    70. The call was an advertisement to use Defendant affiliate link to drive traffic

10   and sell the services of Defendant customer, specifically solar panel consulting and

11   installation services.

12   71. The call was an advertisement for goods and services.

13   72. The link provided was redirected through Defendant affiliate link to drive

14   traffic and sell the services of Defendant customer.

15   73. Defendant are paid for this traffic, referrals, and/or commissions from the

16   website, and in turn pay a commission to affiliates who market on their behalf.

17   74. Defendant did not disclose the name of the person making the call.

18   75. Defendant did not disclose the name of the telemarketing company.

19   76. Defendant did not disclose the name of the person of company the telemarketer

20   is calling on behalf of.

21   77. Defendant did not disclose the purpose of the call.

22   78. Defendant did not provide a call back number in this call.

23

24

25        [2] https://wheregoes.com/trace/20223982836/

### Other Allegations

79. On September 3, 2022, Plaintiff sent an investigation letter via email to Defendant Diablo Media requesting any proof of consent to receive telemarketing calls, asking to confirm ownership of the affiliate leading to EnergyBillCruncher.com, and the identity of any affiliate to whom the link belonged.

80. In a response email on September 13, 2022, Diablo Media confirmed one of their affiliates sent the link the SMS message, but declined to provide the identity of the affiliate responsible.

81. Diablo Media did not provide a copy of their do internal Not Call Policy upon request; Plaintiff therefor avers no such policy currently exists or existed at the time of the policy.

82. Diablo Media did not file a registration statement with the Secretary of State.

83. Diablo Media did not file a bond with the State Treasurer's Office.

84. Per Diablo Media's website, they are a "marketing company" who can "acquire new customers, generate leads, or drive other customer actions".[3]

85. Per Diablo Media's website they offer "Affiliate services" and "Lead Generation". [4]

86. Diablo Media's website further states "We drive net new customers for our advertisers by **generating leads** and customer acquisition through our owned and operated sites as well as direct-to-consumer internal and **third-party publishers**. This includes email, social, display, native, push, & **SMS channels**, to name a few."[5] (emphasis added)

---

[3] https://archive.ph/gZiWq
[4] Id.
[5] https://archive.ph/30os1

87. Diablo Media states on their website, "we will ensure that you receive the highest possible payouts and commissions in a timely, reliable manner."[6]

88. On the same page, one testimonial states "...working closely with Nichole as my direct Affiliate Manager. She is bright, organized, and extremely committed to providing her clients with the business they need."[7]

89. Diablo Media works closely with their affiliates providing business them with business.

90. According to "Diablo Media Affiliate Agreement" dated April 1, 2021, becoming an affiliate requires Diablo Media's "Express Approval".[8]

91. Because Diablo Media adversities their close working relationship, favorable payment terms, and direct approval for all affiliate plaintiff therefor avers all aforementioned calls were placed on their behalf.

## Defendant's Use of an ATDS

92. The calls were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1167 (2021).

93. The Third Circuit recently clarified that "Congress envisioned a broad understanding of 'equipment'" that constitutes an ATDS. It also clarified that the analysis of whether an ATDS was used in violation of the TCPA centers around "whether the Defendant's employ[s] [ATDS] capacities to make automated calls," Panzarella v.

---

[6] https://archive.ph/aoQkO
[7] Id.
[8] https://archive.ph/AUAt8

Navient Sols., Inc., 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it held that Congress intended to "ban all autodialed calls" because Congress "found autodialer technology to be uniquely harmful." Id. at 879 (cleaned up).

94. In enacting the ATDS prohibition, the Third Circuit cited favorably to Congressional understanding "that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications," including by "relying on computerized databases containing telephone numbers during their dialing campaigns." Id. at 880 (cleaned up). The Third Circuit held that, in passing the TCPA's ATDS prohibition, Congress intended to remedy the problems caused by callers using computer software to dial numbers randomly or sequentially from a list or database. *Id.*

95. The system(s) Defendant used to place the calls to Plaintiff is/are an ATDS because it would be illogical to dial a number manually, have the Plaintiff answer it, and only then connect it to a human being.

96. Other courts have held, post-Facebook, that allegations similar to those as here of the absence of a relationship between the parties, and the random nature of the automation device (such as the ability to randomly generate caller ID numbers), are all indicia of use of a random or sequential dialing device that gives rise to the inference at the pleadings stage that an ATDS was used to make the calls. *Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021).

97. No facts exist here to support the conclusion that Defendant were calling from a curated list of their past customers. By contrast to a company that dials calls en masse to multiple individuals from a list of telephone numbers (as here), a company that calls its existing customers utilizing an imported customer list does not place calls using an

1  ATDS because such calling uses a database targeting existing customers' information

2  rather than computer-generated tables or lists of individuals to be called. *Panzarella*, 37

3  F.4th at 881–882.

4        98. Plaintiff is ignorant of the exact process by which the system(s) used by the

5  Defendant operate other than drawing the reasonable inference and alleging that it stores

6  or produces telephone numbers randomly or possibly sequentially based on the facts

7  ascertainable from the calls he received, as outlined above. Indeed, as at least one district

8  court explained, "The newly clarified definition of an ATDS is more relevant to a

9  summary judgment motion than at the pleading stage." *Gross v. GG Homes, Inc.*, No.

10  3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); accord

11  *Miles v. Medicredit, Inc.*, No. 4:20-cv- 01186-JAR, 2021 WL 2949565 (E.D. Mo. July

12  14, 2021).

### Defendant's Conduct Violates the TCPA

14        99. Defendant made the automated calls. They either physically programmed the

15  automatic dialer to dial them or instructed others to do the same.

16        100.   Defendant made at least four telemarketing calls to Plaintiff.

17        101.   The Plaintiff never provided his consent or requested these calls.

18        102.   Plaintiff was harmed by these calls. He was temporarily deprived of

19  legitimate use of his phone because his phone line was tied up during the automated calls

20  and his privacy was improperly invaded. The Plaintiff was charged for the calls.

21  Moreover, these calls injured Plaintiff because they were frustrating, obnoxious,

22  annoying, were a nuisance and disturbed the solitude of Plaintiff.

23

24

25

1

**Legal Claims**

2

**Count One:**

3

**Violations of 47 U.S.C. § 227(b)'s Prohibition on Calling**

4

**Protected Numbers with an ATDS**

5      103.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

6      104.    Plaintiff received at least four unsolicited phone calls to their cellular

7  telephone(s).

8      105.    The calls were placed using ATDS advertising various services of the

9  Diablo Media's customers.

10     106.    As a result of its unlawful conduct, Defendant invaded Plaintiff's personal

11  privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling

12  them to recover $500 in civil fines for each violation and an injunction requiring

13  Defendant to stop its illegal calling campaign.

14     107.    Defendant attempted to conceal the identity of caller by using short codes

15  for caller id, URL redirection, registering their domain(s) through proxy services, and

16  intentionally neglecting to provide any valid identifying information.

17     108.    Defendant made the violating calls "willfully" and/or "knowingly" under

18  47 U.S.C. § 227(b)(3)(C).   If the Court finds that Defendant willfully and/or knowingly

19  violated this subsection, the court may increase the civil fine from $500 to $1500 per

20  violation under 47 U.S.C. § 227(b)(3)(C).

21     109.    Plaintiff also seeks a permanent injunction prohibiting Defendant and their

22  agents from making telemarketing with an ATDS calls until such time they have

23  implemented controls which will ensure no calls made with the ATDS will be placed to

24  protected numbers.

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### Count Two:

### Violations of 47 U.S.C. § 227(c)'s Prohibition on Telemarketing

### Calls to Numbers on the National Do Not Call List

110.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

111.   The Cell Number of Plaintiff is registered on the Do-Not-Call Registry.

112.   Defendant's calls were made for a commercial purpose.

113.   Defendant called Plaintiff's DNC-registered telephone at least four times within a twelve-month period without having their prior written consent to do so and without an established business relationship.

114.   The foregoing acts and omissions of Defendant and/or their agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do-Not-Call Registry. 47 C.F.R. § 64.1200(c)(2).

115.   Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

116.   Defendant made the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C).   If the Court finds that Defendant willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

117.   Plaintiff also seeks a permanent injunction prohibiting Defendant and their agents from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do-Not-Call Registry.

### Count Three

### Violations of C.R.F. § 64.1200(a)(1)'s Prohibition on

### Telemarketing Calls Using and ATDS

118.   Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

119.   The forgoing acts and omissions of Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 CFR § 64.1200(a)(1), by making at least four calls to Plaintiff's cellphone for non-emergency purposes, to the telephone number(s) of Plaintiff using an ATDS.

120.   As a result of Defendant's and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 CFR § 64.1200(a)(1), Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone number for which he is charged for the call using an ATDS in violation of the statute, each and every call made to his cellular phone pursuant to 47 U.S.C. § 227(b)(3)(B).

121.   If the Court finds that Defendant willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

122.   Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 CFR § 64.1200(a), by making calls, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

## Count Four

## Violations of C.R.F. § 64.1200(a)(2)'s Prohibition on

## Telemarketing Calls Using and ATDS

123.   Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

124.   The forgoing acts and omissions of Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 CFR § 64.1200(a)(2), by initiating or causing to be initiating an advertisement at least four calls to Plaintiff's cellphone using an ATDS.

125.   As a result of Defendant's and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 CFR § 64.1200(a)(2), Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone number for which he is charged for the call using an ATDS in violation of the statute, each and every call which introduced an advertisement his cellular phone pursuant to 47 U.S.C. § 227(b)(3)(B).

126.   If the Court finds that Defendant willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

127.   Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 CFR § 64.1200(a), by making calls, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

## Count Five

## Violations of C.R.F. 64.1200(d)(1)'s Prohibition on

## Telemarketing Calls Without a Written Internal

## Do-Not-Call Policy Available Upon Request

128.   Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

129.   By failing to provide a written do not call policy upon request after making at least four telemarking calls to the Plaintiff. Defendant, and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf jointly and severally, violated 47 U.S.C. § 227(c) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(d)(1).

130.   These violations entitle the defendant to $500 to $1500 per violation under 47 U.S.C. § 227(c)(5).

131.   Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 CFR § 64.1200(d), by making calls until such time they have a written internal Do-Not-Call Policy.

## Count Six

## Violations of C.F.R. 64.1200(d)(4)'s Prohibition on

## Telemarketing Calls Without Properly Identifying

## Sellers and Telemarketers

132.   Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

133.   By failing to provide the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted to the Plaintiff. Defendant, and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf jointly and severally, violated 47 U.S.C. § 227(c) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(d)(4).

134.   These violations entitle the defendant to $500 to $1500 per violation under 47 U.S.C. § 227(c)(5).

135.   Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 CFR § 64.1200(d), by making telemarketing calls until such time they have implemented controls which will ensure all required identification is provided on every call.

### Relief Sought

WHEREFORE, Plaintiff requests the following relief:

   A. An order declaring that Defendant's actions, as set out above, violate the TCPA;

   B. An order declaring that Defendant's actions, as set out above, violate the TCPA willfully and knowingly, and an award trebling statutory damages;

   C. An order declaring that Defendant's actions, as set out above, violate the 227(b) of the TCPA;

   D. An order declaring that Defendant's actions, as set out above, violate the 227(c) of the TCPA;

E. An order declaring that Defendant's actions, as set out above, violate 47 CFR § 64.1200(a)(1);

F. An order declaring that Defendant's actions, as set out above, violate 47 CFR § 64.1200(a)(2);

G. An order declaring that Defendant's actions, as set out above, violate 47 CFR § 64.1200(c)(2);

H. An order declaring that Defendant's actions, as set out above, violate 47 CFR § 64.1200(d)(1);

I. An order declaring that Defendant's actions, as set out above, violate 47 CFR § 64.1200(d)(4);

J. An injunction requiring Defendant to cease all unlawful calls without first obtaining the call recipients' express consent to receive such calls;

K. Because of Defendant's violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3) or 47 U.S.C. § 227(c)(5).

L. An award of reasonable fees and costs;

M. Injunctive relief as requested above in counts one through six.

N. Such other and further relief that the Court deems reasonable and just.

**Plaintiff requests a jury trial as to all claims of the complaint to triable.**

1   Dated this 19th day of October 2022.

2

3                                                    Jason Crews, Pro Se
                                                     164 W. Laurel Ct.
4                                                    Gilbert, AZ 85233
                                                     602-295-1875
5                                                    jason.crews@gmail.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25